**Thomas Earl PARKER,
Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 49A02–8803–CR–100.**

Court of Appeals of Indiana,
Second District.

Nov. 10, 1988.

court of operating a vehicle while intoxicated, a class A misdemeanor,[1] challenging the sufficiency of the evidence and claiming his statutory and constitutional rights were violated.

We affirm.

## FACTS

The facts most favorable to the judgment reveal that on August 12, 1987, Officer Patrick Tompkins (Officer Tompkins) of the Marion County Sheriff's Department stopped Parker for driving through a red light. Upon observing that Parker appeared intoxicated, Officer Tompkins offered Parker the opportunity to submit to a chemical sobriety test (Breathalyzer). Parker refused. Officer Tompkins then informed Parker of the consequences of his refusal under the Implied Consent Law. Again Parker refused to submit to a chemical sobriety test. Later, at the lock-up, Parker changed his mind and requested to take the alcohol breath test.[2] Officer Tompkins refused to give Parker the test.

## ISSUES

The issues presented by Parker are restated as:

1. Was the evidence sufficient to sustain Parker's conviction of operating a vehicle while intoxicated?
2. Were Parker's statutory and constitutional rights violated when the arresting officer refused Parker's request for a chemical sobriety test when Parker had twice refused an offer by the arresting officer?

## DECISION

ISSUE ONE—Was the evidence sufficient to support Parker's conviction of operating a vehicle while intoxicated?

PARTIES' CONTENTIONS—Parker claims the evidence is insufficient to sustain the conviction because his testimony

Jane Ruemmele, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Thomas Earl Parker (Parker) appeals his conviction by the trial

1. Ind. Code 9–11–2–2 (Supp.1987).

2. IC 9–11–4–2 requires that all tests must be administered within three hours after the officer had probable cause to believe the person committed an offense. The record does not indicate, nor can we speculate, the time that elapsed from Parker's arrest to his lock-up.

contradicted the testimony of the arresting officer.

The State responds that the evidence is sufficient.

CONCLUSION—The evidence is sufficient to sustain the conviction.

If there is substantial evidence of probative value to support the judgment, we will not reverse. *Clark v. State* (1987), Ind.App., 512 N.E.2d 223. Officer Tompkins testified that Parker had bloodshot eyes, slurred speech, the odor of alcohol on his breath, and difficulty in removing papers from his glove compartment. Parker also failed the field sobriety finger-to-nose test and was unable to recite the alphabet in proper sequence. Parker's failure of these tests supported Officer Tompkins' belief that Parker was intoxicated. Deputy Larry Harding, who was also on the scene, corroborated Officer Tompkins' testimony and additionally noted that Parker was staggering. The fact that Parker drove through a red light was further evidence that the influence of alcohol impaired his thought and action to such an extent as to endanger others. *See id.* The evidence was sufficient to sustain the conviction for operating a vehicle while intoxicated. *See Jennings v. State* (1987), Ind.App., 503 N.E.2d 906, *trans. denied.*

ISSUE TWO—Were Parker's statutory and constitutional rights violated when the arresting officer refused Parker's request for a chemical sobriety test when Parker had twice refused an offer by the arresting officer?

PARTIES' CONTENTIONS—Parker contends that Officer Tompkins' refusal to administer the test once Parker retracted his earlier refusals violated his statutory and constitutional rights because he was prohibited from gathering exculpatory evidence.

The State urges that under the Implied Consent Law, once an accused reaffirms his refusal to take a chemical sobriety test after being informed that suspension would result, all preconditions for suspension are met.

CONCLUSION—Parker's constitutional and statutory rights were not violated.

The right to due process of law does not include the right to be given a chemical sobriety test in all circumstances. Annot., 95 *A.L.R.3d* 710 (1979). To hold otherwise, would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. *Id.* In *State v. Urrego* (1974), 41 Ohio App.2d 124, 322 N.E.2d 688, the motorist contended that he requested a chemical test but the patrolman refused to give him any test. The court in affirming a conviction for operating a motor vehicle while intoxicated, explained that the State may not suppress evidence, but need not gather evidence for the accused. *Id.* Similarly, in *Morgan v. City of Tulsa* (1983), Okla.Crim., 664 P.2d 1067, the court interpreted the Implied Consent Law to provide no guarantee for a chemical sobriety test, and refused to direct a verdict of acquittal for the defendant when the arresting police officer refused to administer a blood test to the motorist unless he signed a consent document. Marching under the same banner, in Indiana, we have determined that the failure of an arresting officer to accord the individual arrested an opportunity to be chemically tested for alcohol in no way affects the validity of his arrest. *State v. Hummel* (1977), 173 Ind.App. 170, 363 N.E.2d 227, *cert. denied,* 436 U.S. 905, 98 S.Ct. 2236, 56 L.Ed.2d 403.

The purpose of the Implied Consent Law was to strengthen the laws for the protection of the public and diminish the perils resulting from drunken driving. *Ewing v. State* (1974), Miss., 300 So.2d 916. These laws add another weapon, the chemical sobriety test, in the arsenal aimed at reducing drunken driving. *See State v. Barry* (1958), 183 Kan. 792, 332 P.2d 549.

Ind. Code 9–11–4–2 provides that "[a] law enforcement officer who has probable cause to believe that a person has committed an offense under this article shall offer the person the opportunity to submit to a chemical test." "If a person refuses to submit to a chemical test, the arresting officer shall inform the person that his refusal will result in the suspension of his

driving privileges." IC 9–11–4–7(a). "If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of his driving privileges ..., the arresting officer shall ... obtain the person's driving license ... and issue a receipt valid until the person's driving privileges are suspended by the bureau...." IC 9–11–4–7(b)(1).

█ Officer Tompkins adhered to the procedures set forth under the Implied Consent Law. The statute does not contain language requiring an arresting officer to provide a chemical sobriety test if earlier refusals of the test are subsequently retracted. Nor can such relief be inferred from the plain language of the statute. Thus, in order to comply with the Implied Consent Law, a person must submit to the chemical test when it is offered by the law enforcement officer. *See* IC 9–11–4–2.

Nor does IC 16–13–6.1–32(c) (1982) mandate the State to provide a chemical sobriety test for Parker. IC 16–13–6.1–32(c) merely provides that "[a]ny person to be taken to the city lockup or county jail shall be evaluated at the earliest possible time for *nonalcoholic factors* which may be contributing to the appearance of intoxication." (Emphasis supplied). The statute neither requires a chemical test nor is the purpose of the statute to provide exculpatory evidence for a defendant. A motorist cannot manipulate these statutes to permit him to take a chemical sobriety test when he thinks it will be most favorable for him to do so. *See* IC 16–13–6.1–1.

In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for Parker at a later time what he speculates might have been more scientific evidence of sobriety.

Thus, the trial court properly concluded that Parker refused to submit to a chemical sobriety test and his subsequent retraction of his refusal was of no consequence.

AFFIRMED.

SHIELDS, P.J., and ROBERTSON, J., concur.